## THE ANCHORIA.

### (District Court, S. D. New York. March 19, 1902.)

1. SHIPS—LOADING APPLIANCES—CONDITION—DUTY OF OWNER.

   It is the duty of a shipowner to keep his ship in such condition that the loading appliances may be reasonably used without being liable to catch on obstructions, and endanger a gangway man handling a whip.

2. SAME—DEFECTS—DUTY TO WARN EMPLOYES.

   Where several rungs of a stationary ladder on the ship projected beyond the side of the ladder, so that the loading appliances were liable

to catch on them, and endanger the gangway man handling the whip, and he had no knowledge of the danger, it was the owner's duty to give him notice, so that he could refrain from exposing himself to the peril if he so wished.

3. SAME—SUFFICIENCY OF EVIDENCE.

The load on reaching the hold was received by an employé working there, who knew the condition of the ladder and the danger from the projecting rungs. He testified that the load was unslung a little forward of the ladder, and the sling hooked up and taken by him to the coaming of the hatch, out of danger from the ladder, etc., and he gave an unsatisfactory explanation as to why it caught on the rung. Testimony on the part of the claimant showed that the load was unloaded forward of the ladder, and in close proximity to it. *Held* to show that the load was unslung nearer the ladder than the employé was willing to admit, and that he negligently failed to keep it away from the projecting rungs.

4. SAME—DAMAGES—AMOUNT.

An employé injured by reason of a defective ladder on a ship was unconscious for several days. Among other wounds, he suffered a compound fracture of his right leg, necessitating several painful operations, as a result of which his leg was shortened about three inches, and remained stiff. He was permanently disabled for anything but very light work, which he could probably do only when sitting, and such work appeared difficult to obtain. He had been a healthy man, 44 years old, earning $3 a day, and $5 for night work, and had steady employment. *Held*, that $6,000 damages was reasonable.

5. SAME—NEGLIGENCE OF FELLOW SERVANT.

The contributory negligence of a fellow servant was no defense.[1]

In Admiralty.

Wilford H. Smith, for libelant.

Frederick E. Fishel (H. Snowden Marshall, advocate), for claimant.

ADAMS, District Judge. This is an action brought to recover damages for personal injuries suffered by the libelant while working on the steamship Anchoria, on the 11th day of August, 1899, between 9 and 10 o'clock in the morning. The steamer was being loaded at New York with lumber and iron, and the libelant was a gangway man in charge of the forward whip of No. 2 hatch. A span of rope ran between the masts of the vessel, about 25 feet above the deck, and was used to support four whips, two for hatch No. 2, and two for hatch No. 3. The whips were purchases or falls formed of ropes and blocks, with chain slings at the ends. They were operated by steam winches. The whips of No. 2 hatch at the time in question were being used to load iron, and it was the libelant's duty to stand on the main deck at the forward part of the hatch, and guide the whip, so that the cargo in the sling would not strike the hatch coamings of the decks as it descended with the load, and the sling would not catch as it came up empty. While he was performing this duty, and after he had guided a draft of iron into the lower hold, the bight of the sling in returning caught on a projecting rung of a stationary iron ladder running from the bottom of the hold to the under side of the deck above, about a foot forward of the coaming of the hatch. The

[1] Concurrent negligence of master and fellow servant, see note to Maupin v. Railway Co., 40 C. C. A. 236.

effect of the catching was to instantly cause a tension on the fall which the libelant held, and jerk him from his place on the deck into the hatch, where he fell to the bottom of the hold, a distance of about 32 feet, causing the injuries for which he sues.

The ladder was about a foot and a half wide, and consisted of two upright sidepieces, with 10 or 12 rungs, which ran through holes in the sidepieces, and originally were welded smooth on the outside; but the starboard or inshore sidepiece of the ladder had in some way become bent towards the port side of the vessel, so that several of the rungs projected from 1½ to 3 inches on the inshore side. It was upon one of these that the sling caught. The ladder had been out of order in this way for several months or a year, to the knowledge of all who had occasion to use the hold, including the agent of the steamer who employed the men who worked at loading and discharging. No defense is interposed to the libelant's claim with respect to the condition of the ladder, but it was urged that the accident was the result of negligence on the part of the libelant and his fellow servants, in that they knew, or should have known, the condition of the ladder, and should have guarded against the sling catching on the rung.

The libelant was new to the work at this particular place, and was not notified or aware of the condition of the ladder. Nor was he, while doing the work, in such a position that he should, in the exercise of ordinary care, have observed its defective condition. It was the duty of the owner to keep the ship in such order that the loading appliances could be reasonably used without liability to catch on obstructions which would become sources of danger to the gangway man handling the whip. And, in the event of the existence of danger which was unknown to the gangway man, it was incumbent on the owner to give him notice to that effect in order that he might refrain from exposing himself to the peril, if he should be unwilling to take the risk. In neither respect was the duty of the employer fulfilled, and I hold that there was negligence for which the vessel is liable, and that there was no contributory negligence on the part of the libelant.

It appears that the libelant and the workmen in the hold were employed by the same master and were engaged in a common occupation. When this draft reached the hold, it was received by a man working there in receiving the cargo named White, who had been familiar with the condition of the ladder some months before this time, and had known of the danger from the projecting rungs when cargo was being loaded or unloaded. He said that this draft of iron was unslung a little forward of the ladder, and the sling hooked up and taken by him to the coaming of the hatch out of danger from the ladder, and that he then directed the winchman to go ahead, and had turned to walk back of the hatch, when the libelant fell; that he then noticed the sling caught on the projecting rung. He attempted to account for this by a motion of the span, incident to its use by the several whips which caused it to sway; but such explanation is not satisfactory. This witness said the iron was to be stowed as far forward as possible. Testimony on the part of the claimant shows

that the draft was unloaded forward of the ladder and in close prox-
imity to it. I think that the draft was unslung nearer the ladder than
White was willing to admit, and that he negligently omitted to take
proper precautions to keep it away from the projecting rungs.

The libelant's injuries were concededly very serious. He was un-
conscious for several days after the accident. Among other severe
and painful wounds, he received a compound fracture of his right leg,
rendering several operations necessary, during which he suffered
intense agony. As a result of the operations, the leg was shortened
about three inches, and remained stiff. In consequence of his inju-
ries, he became permanently disabled for any but very light work,
which he has been, and probably will be, only able to do when sitting.
It appears that such work is difficult to obtain. At the time of the
accident, he was a healthy man of 44 years of age, and earning $3
a day for day work, and $5 for night work, with steady employment.
I consider $6,000 a reasonable allowance for his damages, under the
circumstances.

The contributory negligence of a fellow servant is not a defense in
a case of this kind, under the authorities. Railway Co. v. Cummings,
106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; Steamship Co. v. Carey,
119 U. S. 245, 7 Sup. Ct. 1360, 30 L. Ed. 354; Young v. Railway Co.
(C. C.) 46 Fed. 160; Railway Co. v. Young, 1 C. C. A. 428, 49 Fed.
723; Kennedy v. Grace & Hyde Co. (C. C.) 92 Fed. 116; Thomas,
Neg. 908.

Decree for libelant for $6,000, with interest from August 7, 1901,
the time of filing the libel, and costs.