STATE, RESPONDENT, *v.* HUGHES, APPELLANT.

(No. 2,622.)

(Submitted March 10, 1909. Decided March 20, 1909.)

[100 Pac. 610.]

*Criminal Law—Violation of Eight-hour Law—Employer and Employee — Contractors — Subcontractors — Evidence —Insufficiency.*

1. H., a general contractor, sublet to others a contract for the construction of a city sewer. Thereafter he had no further control of the work except to the extent of seeing that the requirements of his contract with the city were complied with. The men employed were paid by the subcontractors, who had exclusive control over, and direction of, them. H. was charged with a violation of the eight-hour law (Revised Codes, secs. 1739, 1740), and convicted. *Held*, that defendant did not sustain the relation of employer to any of the men employed by the subcontractors, and could therefore not be held responsible for the conduct of the latter in requiring their men to work more than eight hours a day.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

NICK HUGHES was convicted of a violation of the eight-hour law, and, from the judgment and an order denying his motion for new trial, he appeals. Reversed and remanded.

*Messrs. Hogan & Lamb,* for Appellant.

The provisions of this Act are so indefinite that it is difficult to determine therefrom exactly to whom its provisions are intended to apply, and there is no other eight-hour law, with the exception of that of the state of Utah, provided for in the Constitution of that state (*State* v. *Holden,* 14 Utah, 71, 46 Pac. 756, 37 L. R. A. 103; *In re Morgan,* 26 Colo. 415, 77 Am. St. Rep. 269, 58 Pac. 1071, 47 L. R. A. 52), which is identical to the Montana eight-hour law. Similar laws of nearly all other states having such a law expressly provide to whom their provisions are intended to apply by enumerating the different classes—contractor, subcontractor, agent, foreman or employer— and providing that any of them violating the provisions of the law shall be deemed guilty. (*In re Dalton,* 61 Kan. 257, 59 Pac. 336, 47 L. R. A. 380; *State* v. *Davis,* 43 Wash. 116, 86 Pac. 201; *In re Boyce,* 27 Nev. 299, 75 Pac. 1, 65 L. R. A. 47; *City of Cleveland* v. *Clements Const. Co.,* 67 Ohio St. 197, 93 Am. St. Rep. 670, 65 N. E. 885, 59 L. R. A. 775; *United States* v. *Ollinger,* 55 Fed. 959.) It was probably intended that our law should operate in the same manner. Although the provisions of our Act do not name subcontractors, it must have been intended to include them. (*People* v. *Orange County Road Const. Co.,* 175 N. Y. 84, 67 N. E. 129, 65 L. R. A. 33.) These statutes, however, apply only to cases where the relation of employer and employee, or master and servant, exists. (*Holden* v. *Hardy,* 169 U. S. 366, 18 Sup. Ct. 383, 42 L Ed. 780; *In re Ten-hour Law for Street Railway Corporations,* 24 R. I. 603, 54 Atl. 602, 61 L. R. A. 612.) One of the reasons for holding the law unconstitutional was because there was "no penalty imposed upon the 'officer' or 'agent' who 'exacts' the labor."

"The burden of proving every element of the crime charged in an indictment rests upon the state." (*State* v. *Samuels* (Del.), 67 Atl. 164.) The evidence here conclusively shows that the men alleged to have worked more than eight hours were not servants of the defendant. He exercised no control over the work, except to see that it was done according to the plans and specifications. "A reservation of the employer of the right by himself or his agent to supervise the work merely for the purpose of determining whether it is being done in conformity to the contract does not affect the relation." (Am. & Eng. Ency. of Law, 2d ed., p. 188; *Casement* v. *Brown*, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; *Vosbeck* v. *Kellogg*, 78 Minn. 176, 80 N. W. 957.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. L. Murphy,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY, delivered the opinion of the court.

The defendant, having been convicted in a justice's court of Yellowstone county of a violation of the provisions of the statute (Revised Codes, secs. 1739, 1740) commonly known as the "Eight-hour Law," appealed to the district court. Upon a trial by that court, without a jury, he was again convicted. He has appealed to this court from the judgment and an order denying his motion for a new trial. The charging part of the complaint is as follows: "In that the said Nick Hughes, then and there being, and being then and there the person named as a contractor in a certain contract theretofore let to him by the city of Billings, Yellowstone county, Montana, for the excavation and construction of that certain sewer, commonly known as the Sixth Avenue sewer, in said city of Billings, did then and there knowingly, willfully, wrongfully, and unlawfully cause, suffer and permit divers and sundry persons, whose names are to this complainant unknown, to render and perform services, work and labor in and upon the construction and excavation of said sewer, for a period of more than eight hours, to-wit, nine

hours, as and for a single day's work and labor, on said seventeenth day of April, 1908, the said persons so rendering and performing said services, work and labor being then and there employed by said Nick Hughes in the prosecution of the excavation and construction of said sewer under and by virtue of said contract so let to him by the said city of Billings, as aforesaid, contrary to the form, force and effect," etc.

Of the various contentions made on defendant's behalf, we are required to notice only one, to-wit, that the evidence is insufficient to sustain the conviction. The statute declares:

"Sec. 1739. A period of eight (8) hours shall constitute a day's work on all works or undertakings carried on or aided by any municipal, county or state government, and on all contracts let by them, and in mills and smelters for the treatment of ores, and in underground mines, and in the washing, reducing or treatment of coal.

"Sec. 1740. Every person, corporation, stock company or association of persons who violate any of the provisions of section 1739 (1) of this Act shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred ($100) dollars nor more than five hundred ($500) dollars, or by imprisonment in the county jail for not less than thirty days nor more than six months, or by both such fine and imprisonment."

The work upon which the defendant is alleged to have been engaged was being done on behalf of the city of Billings, and therefore fell within the class of works to which the statute by express terms applies. It was pointed out in *State* v. *Livingston Concrete Bldg. & Mfg. Co.*, 34 Mont. 570, 87 Pac. 980, that it is a valid exercise of legislative power. In considering how its provisions may be violated, this court said: "Manifestly in no other way than by the employee working more than eight hours a day in any of the designated employments, or by the employer causing him to do so." Here is defined and stated the condition calling for its application. The employer is subject to its penalty if he causes his employee to continue his work beyond the prescribed number of hours, and the employee

submitting to the unlawful requirement is likewise subject to it. It is clear, therefore, that the contract relation of employer and employee must exist, and that the particular employment must be one of the classes mentioned in the Act. It includes any work undertaken or aided by the state, a county, or a municipality; but the intention is that, as applied to the employer, the penalty for a violation must nevertheless fall upon the person who causes the employee to violate its provisions. In other words, the person occupying a position of authority over one engaged as an employee and exercising control over him is the employer who comes within the prohibition. If the work is done directly by the state, county, or municipality, through its officers, the officers are responsible; if it is done by the letting of a contract—as is usually the case—the contractor is responsible, because he alone gives personal supervision to the work and exercises control over those employed in their several capacities; and this is so whether the contract contains any stipulation upon the subject or not, for it is the character of the work that brings both the employer and employee within the reach of the law.

The evidence submitted at the trial in the district court discloses the following: On October 9, 1907, a contract was let to the defendant by the city for the construction of the sewer mentioned in the complaint, according to plans and specifications furnished, including excavation, manholes, bulkheads, etc., he to furnish all work and materials required. For the faithful performance of the stipulations of the contract he was required to furnish, and did furnish, to the city an undertaking in the sum of $60,000. The work was to be completed on or before December 1, 1908. The price was to be paid in monthly installments upon estimates by the city engineer, ten per cent upon each estimate to be retained by the city until the completion of the work. There was no reservation in favor of the city whereby it might control the work or dictate the employment of the men necessary to do it. The defendant thereafter sublet by contract with Nelson & Pederson, copartners, all of the work

except that required for the excavation, they undertaking to perform their portion of it in accordance with the plans and specifications furnished by the city. They were required to furnish to defendant security for their faithful performance according to the terms of his contract with the city. The work of excavation was let to one J. J. Palmer, under similar conditions. Payments were to be made by the defendant from month to month upon the same estimates as they were to be made to him by the city. Thereupon Nelson & Pederson and J. J. Palmer began the performance of their respective contracts, the defendant having no further control of the means by which the work was to be accomplished, nor any control of the work except to the extent of seeing that the result was in accordance with the requirements of his contract with the city, both as to the quality of the work and the time within which it was to be completed. Nelson & Pederson and Palmer employed and paid their own men and had exclusive control over and direction of them. The defendant was never present except to overlook the work from time to time to see that the quality of it was meeting the requirements of his contract. There is no controversy but that, if any of the men employed worked longer than eight hours on the day in question, they were not required to do so by Hughes personally, but by Nelson & Pederson or by Palmer.

Upon the assumption that the law was violated—and the evidence is very unsatisfactory on this point—the defendant cannot be held responsible, for he did not at the time of the alleged violation sustain the relation of employer to any of the men employed by Nelson & Pederson or by Palmer. As to him the latter were independent contractors, and were not subject to his will; nor did they represent his wishes except as to the result of the work. (*Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906.) He had no power to dictate to them what men they should hire, what rate of wages they should pay, or what hours of work they should require. In all these particulars they were free from his control and direction, and were solely responsible to their men under the law for the treatment accorded to them.

Under these circumstances. the defendant could not be held responsible for the conduct of Nelson & Pederson or Palmer.

The judgment and order are reversed, and the cause is remanded.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.